B 104   (FORM 104) (08/07)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFF<br><br>**Heather W. Culp, Trustee** | DEFENDANTS<br><br>**Peter Lee and Norma Lee** |
|---|---|
| ATTORNEYS (Firm Name, Address, and Telephone No.)<br><br>Cole Hayes<br>601 S. Kings Drive<br>Suite F – PMB # 411<br>Charlotte, NC 28204<br>704-490-4247 | ATTORNEYS (If Known) |

| PARTY (Check one box only)<br>☐ Debtor     ☐ U.S. Trustee/Bankruptcy Admin.<br>☐ Creditor   ☐ Other<br>☒ Trustee | PARTY (Check one box only)<br>☐ Debtor     ☐ U.S. Trustee/Bankruptcy Admin.<br>☐ Creditor   ☒ Other<br>☐ Trustee |
|---|---|

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

Avoidance of transfers, recover of transfers, and sale of real property: 11 U.S.C. §§ 105, 363, 544, 548, and 550 as well as N.C. Gen. Stat. § 39-23.1 et seq. and 28 U.S.C. § 3304 et seq .

**NATURE OF SUIT**
(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1)— Recovery of Money/Property**
☐ 11-Recovery of money/property -§542 turnover of property
☐ 12-Recovery of money/property -§547 preference
☒ 13-Recovery of money/property -§548 fraudulent transfer
☒ 14-Recovery of money/property – other

**FRBP 7001(2) — Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3)— Approval of Sale of Property**
☒ 31-Approval of sale of property of estate and of a co-owner -§363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41 -Objection / revocation of discharge §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6)— Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6)— Dischargeability (continued)**
☐ 61-Dischargeability -§523(a)(5), domestic support
☐ 68-Dischargeability -§523(a)(6), willful and malicious injury
☐ 63-Dischargeability -§523(a)(8), student loan
☐ 64-Dischargeability -§523(a)15), divorce or separation Obligation (other than domestic support)
☐ 65-Dischargeability –other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief— imposition of stay
☐ 72-Injunctive relief— other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**PREP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**PREP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐SS-SIPA Case—15 U.S.C. §78a *et.seq.*
☐02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☒ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand – To be determined |
| Other Relief Sought | |

| BANKRUPTY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>**Paul Hemingfield and Alison Hemingfield** | | BANKRUPTCY CASE NO.<br>21-30490 |
| DISTRICT IN WHICH CASE IS PENDING<br>Western | DIVISIONAL OFFICE<br>Charlotte | NAME OF JUDGE<br>J. Craig Whitley |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br>*/s/ Cole Hayes* | | |
| DATE<br>July 22, 2022 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Cole Hayes | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management Electronic Case Filing system (CM/ECF), (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs and Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys**. Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature**. This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
(Charlotte Division)

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 7 |
| **Paul Hemingfield and Alison Hemingfield** | ) | |
| | ) | Case No. 21-30490 |
| Debtors. | ) | |
| | ) | |
| | ) | |
| **Heather W. Culp, Trustee of the** | ) | |
| **Bankruptcy Estate of Paul Hemingfield** | ) | |
| **and Alison Hemingfield** | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | Adv. Proc. No. 22-_____ |
| | ) | |
| **Peter F. Lee and Norma Lee** | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |

## **COMPLAINT**

Now comes Heather W. Culp (the "Plaintiff") as the Trustee for the Bankruptcy Estate of

Paul Hemingfield and Alison Hemingfield and shows the Court as follows:

### **Parties, Jurisdiction, and Venue**

1.      The Plaintiff is the duly appointed, acting, and qualified Chapter 7 Trustee for the

bankruptcy estate of Paul Hemingfield and Alison Hemingfield.

2.      Paul Hemingfield and Alison Hemingfield (the "Debtors") are the debtors in the

bankruptcy case bearing Case Number 21-30490 (the "Bankruptcy Case"), filed on August 31,

2021 (the "Petition Date"), and pending in the Bankruptcy Court for the Western District of North

Carolina (the "Court").

3.      The Defendants, Peter and Norma Lee, are Alison Hemingfield's parents and insiders of the Debtors.

4.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 157 and 1334.

5.      This matter is a core proceeding pursuant to 28 U.S.C. § 157.

6.      Venue of this action is proper in this Court pursuant to 28 U.S.C. § 1409(a).

7.      The statutory predicates for relief are 11 U.S.C. §§ 105, 363, 544, 548, and 550 as well as N.C. Gen. Stat. § 39-23.1 *et seq.* and 28 U.S.C. § 3304 *et seq.*

8.      The Plaintiff commences this action pursuant to Rules 4003, 4004, and 7001 of the Federal Rules of Bankruptcy Procedure.

## Facts

### The Debtors' Financial Condition in the Six Years Prior to the Petition Date

9.      The Debtors owned and operated AP Hemi, Inc., a corporation organized and registered in the State of North Carolina.

10.     In March 2014, AP Hemi, Inc. purchased the assets of Alliance Document Solutions, Inc. ("Alliance") for $2,950,000.00.   The assets purchased included real property located at 10348 Southern Loop Boulevard in Pineville, North Carolina.   Alliance financed $1,000,000.00 of the purchase price (the "Alliance Note") secured by a deed of trust on 10348 Southern Loop Boulevard.[1]   The Alliance Note required monthly payments in the amount of $17,399.02 (almost entirely comprising interest) and a balloon payment of $917,373.20 on April 1, 2019.

11.     The Debtors guaranteed the Alliance Note.

---

[1] The purchase was owner financed by a former husband and wife.  The Alliance Note was later assigned and is now two separate debts—one debt to the husband and one debt to the wife—but discussed as one, consolidated debt in this Complaint for the sake of clarity.

12.     To further finance the Alliance purchase, in March 2014, AP Hemi, Inc. borrowed $2,800,000.00 from Vantage South Bank.

13.     In March 2014, AP Hemi, Inc., opened a $100,000.00 revolving line of credit with Vantage South Bank.

14.     Upon information and belief, and according to the records of the North Carolina Secretary of State, in July 2014, VantageSouth Bank merged with Yadkin Bank. Yadkin Bank was the surviving entity. Upon further information and belief, in March 2017, Yadkin Bank merged with First National Bank of Pennsylvania ("FNB"). FNB was the surviving entity. The two previously mentioned loans owing to Vantage South Bank were ultimately transferred to FNB (the two loans owed to FNB, the "FNB Debt"). On the Petition Date, FNB was the holder of the two previously mentioned loans originally owing to Vantage South Bank.

15.     The FNB Debt was secured by a deed of trust on 10348 Southern Loop Boulevard.

16.     The Debtors guaranteed the FNB Debt.

17.     The FNB Debt is a Small Business Administration loan insured or guaranteed by the United States of America. The Small Business Administration is an agency of the United States of America.

18.     A partial summary of the historical balance of the FNB Debt is attached as Exhibit 1.

19.     In May 2016, Debtor Paul Hemingfield contacted the holders of the Alliance Note seeking a modification because AP Hemi, Inc. was not generating sufficient profits. At that time, the principal balance of the Alliance Note was still $1,000,000.00. Debtor Paul Hemingfield requested that the principal on the Alliance Note be reduced. The holders of the Alliance Note

refused.  After meeting, the parties instead agreed to reduce the required interest payments and extend the terms of the Alliance Note.

20.      In August 2018, Debtor Paul Hemingfield contacted the holders of the Alliance Note to inform them that the business was failing and was struggling to make payments to creditors.

21.      By December 2018, AP Hemi Inc. had altogether ceased making payments on the Alliance Note.  Debtor Paul Hemingfield alluded at that time that he was considering filing bankruptcy.

22.      In October 2019, AP Hemi, Inc. sold its real property located at 10348 Southern Loop Boulevard for $2,200,000.00.  The sale price was not sufficient to satisfy the debt secured by 10348 Southern Loop Boulevard.  From the proceeds of the sale, the FNB Debt was partially satisfied via payment of $1,664,869.55.  The debt owed on the Alliance Note was partially satisfied via payment of $110,000.00.

23.      On the Petition Date, the Debtors still owed over $485,000.00 on the FNB Debt and owed over $865,000.00 on the Alliance Note.[2]

24.      In the six years prior to the Petition Date, the combined debts owed to FNB and Alliance fluctuated between $3.44 million and no less than $1.35 million, with the lowest balance being after the sale of 10348 Southern Loop Boulevard.

25.      In the six years prior to the Petition Date, the value of the combined assets of the Debtors and AP Hemi, Inc. available to satisfy these debts never exceeded the amounts owed to FNB and Alliance:

---

[2] The amount shown owing on the Alliance Note is per the Debtors' schedules.  Plaintiff believes the scheduled debt on the Alliance Note is understated.

a.     No appreciable reductions in principal were made to Alliance prior to the sale of 10348 Southern Loop Boulevard.

b.     When AP Hemi, Inc. sold 10348 Southern Loop Boulevard, FNB was owed over $2.22 million.

c.     The sale of 10348 Southern Loop Boulevard did not satisfy the debts secured by the property or the debts guaranteed by the Debtors.

d.     During the six years prior to the Petition Date, all the Debtors' other real property holdings were either over encumbered or had no more than $131,000.00 in equity.

e.     Based on a public records search, during the six years prior to the Petition Date, the Debtors owned minimal unencumbered personal property that could have been liquidated to satisfy the debts of FNB and Alliance.

f.     AP Hemi Inc.'s personal property was sold at auction in April 2022 for less than $17,000.00.

26.     Not counting any debts other than those owed to FNB and Alliance, the Debtors were therefore insolvent for at least six years prior to the Petition Date.

27.     Including the Debtors' other debts pushes them farther into insolvency by at least another $1.1 million depending on the date in question.  For instance, in addition to the debts owed to FNB and Alliance, the Debtors were also liable for debts to:

a.     The Small Business Administration ($1,000,000.00 on the Petition Date, which according to the Debtors, is in addition to the FNB Debt [Case No. 21-30490, Doc. 7, pg. 9]; the Small Business Administration filed its own UCC Financing Statement in 2020);

b.     American Express (over $114,000.00 in October 2019);

c. On Deck Capital, Inc. (at least $21,000.00 in October 2019);

d. Discover Bank (approximately $25,000.00 on the Petition Date according to the Debtors);

e. Wells Fargo Bank, N.A. (a $235,000.00 mortgage lien as of July 2021 on the real property fraudulently transferred to AP Hemi Properties, LLC discussed below); and

f. Two creditors holding secured claims on an over-encumbered home the Debtors owned in Statesville, North Carolina and sold in January 2021 for $580,000.00. At closing, the two mortgage holders on the Statesville property were paid over $575,000.00.  To cover the mortgages and costs of sale, the Debtors had to pay an additional $15,591.87 at closing.

### The Debtors' Attempts to Shield Assets from Creditors and Transfers to the Defendants

28. In October 2018, just a few month after Debtor Paul Hemingfield indicated to creditors that AP Hemi, Inc. was failing, the Debtors began working to convey their real property holdings to insiders so that the properties would not be available to satisfy their individual debts:

a. On October 3, 2018, the Debtors conveyed real property located at 1949 Winpole Lane in Charlotte, North Carolina to AP Hemi Properties, LLC, a limited liability company wholly owned by the Debtors.  AP Hemi Properties, LLC paid no consideration for this transfer.  This transfer has already been avoided.

b. A week later, on October 10, 2018, the Debtors conveyed their partial interest in 122 Spring Shore Road in Statesville, North Carolina (the "Property") to the Defendants.  The Defendants paid no consideration for the transfer of the Debtors' interest

in the Property.  The Debtors' transfer of their interest in the Property is hereinafter referred

to as the "Property Transfer."

29.      In attorney files turned over to the Plaintiff, the Debtors' bankruptcy counsel

described the Debtors' dealings during this period as follows:

> What this is (the transfer of the home) is quite plainly a fraudulent transfer to avoid creditors.  They got antsy with all they owe, and therefore thought they were being smart.  The problem is that they can no longer use their bankruptcy exemptions to protect the $70,000 in equity.  This is the trap that gets people, and one you have to be cognizant of.  Had they moved the house years ago (i.e.. before they were insolvent)... it's a different story.  They did it after they were insolvent, so they have no argument to defend it here.

30.      In addition to the Property Transfer, the Debtors transferred at least $74,523.00 to

the Defendants in the four years prior to the Petition Date (the "Four Year Transfers").  Of that

amount, the Defendants received at least $32,441.00 in the two years prior to the Petition Date (the

"Two Year Transfers").  The Two Year and Four Year Transfers are summarized on Exhibit 2.

31.      In addition to the Two Year Transfers and the Four Year Transfers, the Debtors

transferred $1,534.00 per month to the Defendants in the fifth and sixth years preceding the

Petition Date for a total of $36,816.00 (the "Five and Six Year Transfers").

32.      The Two Year Transfers, the Four Year Transfers, and the Five and Six Year

Transfers are hereinafter referred to as the "Monetary Transfers."

33.      The Debtors received no consideration for the Monetary Transfers.   More

specifically:

a.      Many of the Two Year and Four Year Transfers are attributable to checks

written directly to Debtor Alison Hemingfield and deposited into a joint account held in

the name of Alison Hemingfield and the Defendants.

b.      The joint account was first opened when the Defendants moved to the

United States from England.  According to the Debtors' bankruptcy counsel, Debtor Alison

Hemingfield had to be named on the joint account as the Defendants were not permanent residents of the United States.

      c.     The Debtors' bankruptcy counsel elaborated further that all transactions out of the joint account are bills of the Defendants.

      d.     The Debtors did not use the funds in the joint account.

      e.     The Monetary Transfers were made by the Debtors to support the Defendants when they had no legal obligation to do so.

34.     According to attorney files turned over to the Plaintiff, the Debtors informed their bankruptcy counsel of the Monetary Transfers.

35.     The Debtors' bankruptcy counsel prepared a draft Statement of Financial Affairs that partially disclosed the Monetary Transfers as shown on Exhibit 3.

36.     However, as shown on the docket in the Bankruptcy Case, the Debtors ultimately chose to not disclose the Monetary Transfers on the Statement of Financial Affairs filed under penalty of perjury.

37.     The Debtors further concealed the Monetary Transfers by failing to disclose the same at their meetings of creditors and by testifying under penalty of perjury that their bankruptcy filings were accurate.

## First Claim for Relief
### Avoidance of Two Year Transfers pursuant to 11 U.S.C. § 548 (Actual and Constructive Fraud)

38.     The Plaintiff realleges all prior paragraphs of this complaint and incorporates them as if fully set forth herein.

39.     The Two Year Transfers represent transfers of property of the Debtors to the Defendants.

8

40.     The Two Year Transfers were made while the Debtors were insolvent.

41.     The Debtors received less than reasonably equivalent value in exchange for the Two Year Transfers.

42.     The Two Year Transfers were made with the intent to hinder, delay, or defraud a creditor or an officer of the Debtors' bankruptcy estate.  The following badges of fraud are applicable to the Two Year Transfers:

      a.     The Defendants are insiders of the Debtors.

      b.     The Debtors were insolvent when they made the Two Year Transfers to the Defendants.

      c.     Several of the Two Year Transfers occurred while the Debtors were preparing to file the Bankruptcy Case.

      d.     At the time of the Two Year Transfers, the Debtors were unable to pay their debts as they came due.

      e.     At the time of the Two Year Transfers, the Debtors were engaged or were about to engage in a business or a transaction for which the remaining assets of the Debtors were unreasonably small in relation to the business or transaction.

      f.     The Debtors did not receive reasonably equivalent value in exchange for the Two Year Transfers.

      g.     The Debtors concealed one or more of the Two Year Transfers.

      h.     The Debtors made the Two Year Transfers during the same time they were divesting themselves of other assets.

43.     The Two Year Transfers should therefore be avoided.

9

**Second Claim for Relief**
**Avoidance of Four Year Transfers pursuant to 11 U.S.C. § 544 and N.C. Gen. Stat. § 39-23.1 *et seq* (Actual and Constructive Fraud)**

44.     The Plaintiff realleges all prior paragraphs of this complaint and incorporates them as if fully set forth herein.

45.     The Four Year Transfers represent transfers of property of the Debtors to the Defendants.

46.     The Four Year Transfers were made while the Debtors were insolvent.

47.     The Debtors received less than reasonably equivalent value in exchange for the Four Year Transfers.

48.     The Four Year Transfers were made with the intent to hinder, delay, or defraud a creditor or an officer of the Debtors' bankruptcy estate.  The following badges of fraud are applicable to the Four Year Transfers:

a.     The Defendants are insiders of the Debtors.

b.     The Debtors were insolvent when they made the Four Year Transfers to the Defendants.

c.     Several of the Four Year Transfers occurred while the Debtors were preparing to file the Bankruptcy Case.

d.     At the time of the Four Year Transfers, the Debtors were unable to pay their debts as they came due.

e.     At the time of the Four Year Transfers, the Debtors were engaged or were about to engage in a business or a transaction for which the remaining assets of the Debtors were unreasonably small in relation to the business or transaction.

     f.     The Debtors did not receive reasonably equivalent value in exchange for the Four Year Transfers.

     g.     The Debtors concealed one or more of the Four Year Transfers.

     h.     The Debtors made the Four Year Transfers during the same time they were divesting themselves of other assets.

49.     The Four Year Transfers should therefore be avoided.

## Third Claim for Relief
### Avoidance of the Property Transfer pursuant to 11 U.S.C. § 544 and N.C. Gen. Stat. § 39-23.1 *et seq* (Actual and Constructive Fraud)

50.     The Plaintiff realleges all prior paragraphs of this complaint and incorporates them as if fully set forth herein.

51.     The Property Transfer represents a transfer of property of the Debtors to the Defendants.

52.     The Property Transfer was made while the Debtors were insolvent.

53.     The Debtors received less than reasonably equivalent value in exchange for the Property Transfer.

54.     The Property Transfer was made with the intent to hinder, delay, or defraud a creditor or an officer of the Debtors' bankruptcy estate.  The following badges of fraud are applicable to the Property Transfer:

     a.     The Defendants are insiders of the Debtors.

     b.     The Debtors were insolvent when they made the Property Transfer to the Defendants.

     c.     At the time of the Property Transfer, the Debtors were unable to pay their debts as they came due.

11

d.      At the time of the Property Transfer, the Debtors were engaged or were about to engage in a business or a transaction for which the remaining assets of the Debtors were unreasonably small in relation to the business or transaction.

e.      The Debtors did not receive reasonably equivalent value in exchange for the Property Transfer.

f.      The Debtors made the Property Transfer during the same time they were divesting themselves of other assets.

55.     The Property Transfer should therefore be avoided.

### Fourth Claim for Relief
### Avoidance of Monetary Transfers pursuant to 11 U.S.C. § 544 and 28 U.S.C. § 3304 *et seq.*
### (Actual and Constructive Fraud)

56.     The Plaintiff realleges all prior paragraphs of this complaint and incorporates them as if fully set forth herein.

57.     The FNB Debt arose prior to the Monetary Transfers.

58.     The FNB Debt is a debt insured or guaranteed by the United States of America.

59.     The Monetary Transfers represent transfers of property of the Debtors to the Defendants.

60.     The Monetary Transfers were made while the Debtors were insolvent.

61.     The Debtors received less than reasonably equivalent value in exchange for the Monetary Transfers.

62.     The Monetary Transfers were made with the intent to hinder, delay, or defraud the United States of America via its guarantee of the FNB Debt.  The following badges of fraud are applicable to the Monetary Transfers:

a.      The Defendants are insiders of the Debtors.

12

b.      The Debtors were insolvent when they made the Monetary Transfers to the Defendants.

c.      At the time of the Monetary Transfers, the Debtors were unable to pay their debts as they came due.

d.      At the time of the Monetary Transfers, the Debtors were engaged or were about to engage in a business or a transaction for which the remaining assets of the Debtors were unreasonably small in relation to the business or transaction.

e.      The Debtors did not receive reasonably equivalent value in exchange for the Monetary Transfers.

f.      The Debtors made the Monetary Transfers during the same time they were divesting themselves of other assets.

63.     The Monetary Transfers should therefore be avoided.

**Fifth Claim for Relief**
**Avoidance of the Property Transfer pursuant to 11 U.S.C. § 544 and 28 U.S.C. § 3304 *et seq.* (Actual and Constructive Fraud)**

64.     The Plaintiff realleges all prior paragraphs of this complaint and incorporates them as if fully set forth herein.

65.     The FNB Debt arose prior to the Monetary Transfers.

66.     The FNB Debt is a debt insured or guaranteed by the United States of America.

67.     The Property Transfer represents a transfer of property of the Debtors to the Defendants.

68.     The Property Transfer was made while the Debtors were insolvent.

69.     The Debtors received less than reasonably equivalent value in exchange for the Property Transfer.

13

70.     The Property Transfer was made with the intent to hinder, delay, or defraud the United States of America via its guarantee of the FNB Debt.  The following badges of fraud are applicable to the Property Transfer:

        a.      The Defendants are insiders of the Debtors.

        b.      The Debtors were insolvent when they made the Property Transfer to the Defendants.

        c.      At the time of the Property Transfer, the Debtors were unable to pay their debts as they came due.

        d.      At the time of the Property Transfer, the Debtors were engaged or were about to engage in a business or a transaction for which the remaining assets of the Debtors were unreasonably small in relation to the business or transaction.

        e.      The Debtors did not receive reasonably equivalent value in exchange for the Property Transfer.

        f.      The Debtors made the Property Transfer during the same time they were divesting themselves of other assets.

71.     The Property Transfer should therefore be avoided.

**Sixth Claim for Relief**
**Recovery of Transfers pursuant to 11 U.S.C. § 550**

72.     The Plaintiff realleges all prior paragraphs of this complaint and incorporates them as if fully set forth herein.

73.     The Monetary Transfers and the Property Transfer are avoidable pursuant to 11 U.S.C. §§ 544 and/or 548.

74.     The Defendants were the initial transferees of the Monetary Transfers and the Property Transfer.

14

75.     As a result, the Plaintiff is entitled to recover the Monetary Transfers and the Property Transfer (or the value of the Monetary Transfers and the Debtors' interest in the Property) from the Defendants.[3]

**Seventh Claim for Relief**
**Request to sell Property pursuant to 11 U.S.C. § 363(h) (in the event the Property Transfer is avoided)**

76.     The Plaintiff realleges all prior paragraphs of this complaint and incorporates them as if fully set forth herein.

77.     If the Property Transfer is avoided and the Debtors' interest in the Property recovered, the bankruptcy estate and the Defendants will own the Property as joint tenants.

78.     The Property is comprised of a single family home on .37 acres of land.  Partition of the Property in kind is not practicable.

79.     Sale of the bankruptcy estate's interest in the Property would realize significantly less for the bankruptcy estate than sale of the Property free of the interests of the Defendants.

80.     The benefit to the bankruptcy estate of a sale of the Property free of the interests of the Defendants outweighs the detriment, if any, to the Defendants.

81.     The Property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power.

82.     Thus, if the Property Transfer is avoided, the Plaintiff should be afforded the authority to sell the Property free and clear of the interests of the Defendants with the Defendants' interests in the Property attaching to the proceeds of the sale.

**WHEREFORE**, the Plaintiff respectfully requests judgment as follows:

1.     That the Monetary Transfers be avoided;

---

[3] To be clear, the Plaintiff has pled alternative grounds to avoid the various transfers at issue, but is only attempting to recover each individual transfer one time.  The Plaintiff is not seeking a double recovery.

2.      That the Property Transfer be avoided;

3.      That the Plaintiff recover the value of the Property Transfer from the Defendants or, alternatively, be permitted to liquidate the Property pursuant to Section 363(h) of the Bankruptcy Code;

4.      That the Plaintiff recover the value of the Monetary Transfers from the Defendants;

5.      That judgement avoiding the Monetary Transfers and avoiding the Property Transfer be entered against the Defendants with said judgment:

      a.      Awarding damages to the Plaintiff in the amount of $111,339.00 for recovery of the Monetary Transfers and

      b.      Vesting the bankruptcy estate with the Debtors' interest in the Property as it existed prior to the Property Transfer.

6.      That the Court grant the Plaintiff such other and further relief as the Court deems just and proper.

<table>
<tr><td></td><td>_____/s/ Cole Hayes /s/_____</td></tr>
<tr><td>Dated: Charlotte, North Carolina<br>July 22, 2022</td><td>Cole Hayes (Bar No. 44443)<br>601 S. Kings Drive<br>Suite F PMB #411<br>Charlotte, NC 28204<br>704-490-4247<br>cole@colehayeslaw.com<br>*Attorney to the Plaintiff*</td></tr>
</table>

16

# Exhibit 1

***Note*** ~~1081~~ **– A P HEMI, INC (3208396)**

|  | Relationship | Date of Birth | Phone Number | Tax Identification |
|---|---|---|---|---|
| ⊕ A P HEMI, INC (3208396) | ⚎ Owner/Signer |  | ********** | EIN **-******* |
| ⚫ PO BOX 9 (3039702)<br>PINEVILLE NC 28134-0009 |  |  |  |  |

Additional Relationships
Tax Name: A P HEMI, INC (3208396)

## Presentments
No Presentments for Account

## Customer

| Date | Description | Transaction Amount | Principal: | Interest: | Principal Balance |
|---|---|---|---|---|---|
| Mar 31, 2014 | Original Rate | Interest Rate: | 6.500000 |  |  |
| Mar 31, 2014 | CHECK | $2,800,000.00 | $2,800,000.00 |  | $2,800,000.00 |
| Mar 31, 2014 | Principal Payment | $2,800,000.00 | $2,800,000.00 |  | $0.00 |
| Mar 01, 2017 | Principal Increase (Conversion) | $2,439,313.21 | $2,439,313.21 |  | $2,439,313.21 |
| Apr 01, 2017 | Rate Change | Interest Rate: | 6.750000 |  |  |
| Apr 03, 2017 | FNB OF PA LOAN# ~~0000000000~~ | $24,688.00 | $10,560.32 | $14,127.68 | $2,428,752.89 |
| May 01, 2017 | FNB OF PA LOAN# ~~0000000000~~ | $24,688.00 | $11,937.05 | $12,750.95 | $2,416,815.84 |
| Jun 01, 2017 | FNB OF PA LOAN# ~~0000000000~~ | $24,688.00 | $11,093.42 | $13,594.58 | $2,405,722.42 |
| Jul 01, 2017 | Rate Change | Interest Rate: | 7.000000 |  |  |
| Jul 03, 2017 | FNB OF PA LOAN# ~~0000000000~~ | $24,688.00 | $10,220.27 | $14,467.73 | $2,395,502.15 |
| Aug 01, 2017 | FNB OF PA LOAN# ~~0000000000~~ | $25,085.39 | $12,043.22 | $13,042.17 | $2,383,458.93 |
| Sep 01, 2017 | FNB OF PA LOAN# ~~0000000000~~ | $25,085.39 | $11,181.88 | $13,903.51 | $2,372,277.05 |
| Oct 02, 2017 | FNB OF PA LOAN# ~~0000000000~~ | $25,085.39 | $10,785.84 | $14,299.55 | $2,361,491.21 |
| Nov 01, 2017 | FNB OF PA LOAN# ~~0000000000~~ | $25,080.27 | $11,764.09 | $13,316.18 | $2,349,727.12 |
| Dec 01, 2017 | FNB OF PA LOAN# ~~0000000000~~ | $25,080.27 | $11,373.53 | $13,706.74 | $2,338,353.59 |
| Jan 01, 2018 | Rate Change | Interest Rate: | 7.250000 |  |  |
| Jan 02, 2018 | FNB OF PA LOAN# ~~0000000000~~ | $25,080.27 | $10,968.97 | $14,111.30 | $2,327,384.62 |
| Feb 01, 2018 | FNB OF PA LOAN# ~~0000000000~~ | $25,387.29 | $11,794.72 | $13,592.57 | $2,315,589.90 |
| Mar 01, 2018 | FNB OF PA LOAN# ~~0000000000~~ | $25,387.29 | $11,397.27 | $13,990.02 | $2,304,192.63 |
| Apr 01, 2018 | Rate Change | Interest Rate: | 7.500000 |  |  |
| Apr 02, 2018 | FNB OF PA LOAN# ~~0000000000~~ | $25,387.29 | $10,986.09 | $14,401.20 | $2,293,206.54 |
| May 01, 2018 | FNB OF PA LOAN# ~~0000000000~~ | $25,690.51 | $11,835.73 | $13,854.78 | $2,281,370.81 |
| Jun 01, 2018 | FNB OF PA LOAN# ~~0000000000~~ | $25,690.51 | $11,431.95 | $14,258.56 | $2,269,938.86 |
| Jul 01, 2018 | Rate Change | Interest Rate: | 7.750000 |  |  |
| Jul 02, 2018 | FNB OF PA LOAN# ~~0000000000~~ | $25,690.51 | $11,014.74 | $14,675.77 | $2,258,924.12 |
| Aug 01, 2018 | FNB OF PA LOAN# ~~0000000000~~ | $25,989.84 | $11,887.26 | $14,102.58 | $2,247,036.86 |
| Sep 04, 2018 | FNB OF PA LOAN# ~~0000000000~~ | $25,989.84 | $10,026.52 | $15,963.32 | $2,237,010.34 |
| Oct 01, 2018 | Rate Change | Interest Rate: | 8.000000 |  |  |
| Oct 01, 2018 | FNB OF PA LOAN# ~~0000000000~~ | $25,989.84 | $12,987.22 | $13,002.62 | $2,224,023.12 |
| Nov 01, 2018 | FNB OF PA LOAN# ~~0000000000~~ | $26,279.46 | $11,452.64 | $14,826.82 | $2,212,570.48 |
| Dec 03, 2018 | FNB OF PA LOAN# ~~0000000000~~ | $26,279.46 | $10,545.63 | $15,733.83 | $2,202,024.85 |
| Jan 01, 2019 | Rate Change | Interest Rate: | 8.250000 |  |  |
| Jan 02, 2019 | Rate Change | Interest Rate: | 8.250000 |  |  |
| Jan 02, 2019 | FNB OF PA LOAN# ~~0000000000~~ | $26,279.46 | $12,073.35 | $14,206.11 | $2,189,951.50 |

| Date | Description | Transaction Amount | Principal: | Interest: | Principal Balance |
|---|---|---|---|---|---|
| Feb 01, 2019 | FNB OF PA LOAN# 0 | $26,576.74 | $12,022.69 | $14,554.05 | $2,177,928.81 |
| Feb 02, 2019 | Rate Change | Interest Rate: | 8.250000 | | |
| Mar 18, 2019 | Automatic Late Charge | $1,063.06 | | | $2,177,928.81 |
| Apr 01, 2019 | Regular Payment | $14,973.26 | $0.00 | $14,973.26 | $2,177,928.81 |
| Apr 16, 2019 | Automatic Late Charge | $1,063.06 | | | $2,177,928.81 |
| Apr 29, 2019 | Interest Payment | $14,973.26 | | $14,973.26 | $2,177,928.81 |
| May 03, 2019 | Regular Payment | $14,973.26 | $0.00 | $14,973.26 | $2,177,928.81 |
| Jun 10, 2019 | Regular Payment | $14,973.23 | $0.00 | $14,973.23 | $2,177,928.81 |
| Jul 16, 2019 | Automatic Late Charge | $598.93 | | | $2,177,928.81 |
| Jul 25, 2019 | Regular Payment | $14,973.27 | $0.00 | $14,973.27 | $2,177,928.81 |
| Aug 13, 2019 | Payment - Extra To Principal | $14,973.27 | $0.00 | $14,973.25 | $2,177,928.81 |
| | Late Charge: | $0.02 | | | |
| Sep 16, 2019 | Interest Payment | $14,973.26 | | $14,973.26 | $2,177,928.81 |
| Oct 01, 2019 | Rate Change | Interest Rate: | 7.750000 | | |
| Oct 01, 2019 | Wire | $1,664,869.55 | $1,664,869.55 | | $513,059.26 |
| Oct 16, 2019 | Automatic Late Charge | $598.93 | | | $513,059.26 |
| Oct 21, 2019 | Regular Payment | $14,973.26 | $0.00 | $14,973.26 | $513,059.26 |
| Nov 01, 2019 | Regular Payment | $3,313.50 | $0.00 | $3,313.50 | $513,059.26 |
| Dec 02, 2019 | Regular Payment | $3,313.50 | $0.00 | $3,313.50 | $513,059.26 |
| Dec 16, 2019 | Regular Payment | $2,984.75 | $1,328.00 | $1,656.75 | $511,731.26 |
| Jan 01, 2020 | Rate Change | Interest Rate: | 7.500000 | | |
| Jan 02, 2020 | FNB OF PA LOAN# 0 | $6,298.25 | $4,539.18 | $1,759.07 | $507,192.08 |
| Feb 03, 2020 | FNB OF PA LOAN# 0 | $6,271.87 | $2,996.26 | $3,275.61 | $504,195.82 |
| Mar 02, 2020 | FNB OF PA LOAN# 00 | $6,271.87 | $3,225.69 | $3,046.18 | $500,970.13 |
| Apr 01, 2020 | Rate Change | Interest Rate: | 6.000000 | | |
| Apr 30, 2020 | Payment - Extra To Principal | $6,271.87 | $823.83 | $5,448.04 | $500,146.30 |
| May 28, 2020 | Payment - Extra To Principal | $6,271.87 | $3,937.86 | $2,334.01 | $496,208.44 |
| Jun 25, 2020 | Payment - Extra To Principal | $6,271.87 | $4,038.94 | $2,232.93 | $492,169.50 |
| Jul 27, 2020 | Payment - Extra To Principal | $5,885.05 | $3,260.15 | $2,624.90 | $488,909.35 |
| Aug 24, 2020 | Payment - Extra To Principal | $5,885.05 | $3,684.96 | $2,200.09 | $485,224.39 |
| Sep 29, 2020 | Payment - Extra To Principal | $5,885.05 | $3,054.58 | $2,830.47 | $482,169.81 |
| Oct 01, 2020 | ACH PAYMENT | $2,421.82 | $2,261.10 | $160.72 | $479,908.71 |
| Nov 02, 2020 | FNB OF PA LOAN | $2,399.53 | $0.00 | $2,399.53 | $479,908.71 |
| Dec 01, 2020 | FNB OF PA LOAN | $2,399.54 | $0.00 | $2,399.54 | $479,908.71 |
| Jan 04, 2021 | FNB OF PA LOAN | $2,399.53 | $0.00 | $2,399.53 | $479,908.71 |
| Feb 18, 2021 | Payment - Extra To Principal | $6,114.88 | $2,355.59 | $3,759.29 | $477,553.12 |
| Mar 17, 2021 | Payment - Extra To Principal | $2,399.55 | $91.38 | $2,308.17 | $477,461.74 |
| Apr 09, 2021 | Payment - Extra To Principal | $6,111.06 | $4,360.37 | $1,750.69 | $473,101.37 |
| May 17, 2021 | Automatic Late Charge | $244.44 | | | $473,101.37 |
| Jun 16, 2021 | Automatic Late Charge | $244.44 | | | $473,101.37 |
| Jul 16, 2021 | Automatic Late Charge | $244.41 | | | $473,101.37 |
| Aug 16, 2021 | Automatic Late Charge | $244.41 | | | $473,101.37 |
| Sep 16, 2021 | Automatic Late Charge | $244.41 | | | $473,101.37 |
| Oct 18, 2021 | Automatic Late Charge | $244.51 | | | $473,101.37 |
| Nov 16, 2021 | Automatic Late Charge | $244.51 | | | $473,101.37 |
| Nov 17, 2021 | Principal Payment | $74,272.06 | $74,272.06 | | $398,829.31 |
| Nov 19, 2021 | Principal Payment | $2,174.79 | $2,174.79 | | $396,654.52 |

| Date | Description | Transaction Amount | Principal: | Interest: | Principal Balance |
|------|-------------|--------------------|------------|-----------|-------------------|
| Dec 16, 2021 | Automatic Late Charge | $244.51 | | | $396,654.52 |
| Dec 22, 2021 | JAMES B ALLEN II SENDER | $93,000.00 | $93,000.00 | | $303,654.52 |
| Jan 18, 2022 | Automatic Late Charge | $202.37 | | | $303,654.52 |
| Feb 16, 2022 | Automatic Late Charge | $202.37 | | | $303,654.52 |
| Mar 16, 2022 | Automatic Late Charge | $202.37 | | | $303,654.52 |
| Apr 01, 2022 | Rate Change | Interest Rate: | 6.250000 | | |
| Apr 18, 2022 | Automatic Late Charge | $149.20 | | | $303,654.52 |
| Apr 26, 2022 | Principal Payment | $9,057.78 | $9,057.78 | | $294,596.74 |
| May 16, 2022 | Automatic Late Charge | $149.20 | | | $294,596.74 |
| Jun 16, 2022 | Automatic Late Charge | $149.20 | | | $294,596.74 |
| Jul 01, 2022 | Rate Change | Interest Rate: | 7.500000 | | |

*Note* ▓▓▓1103 - A P HEMI, INC (3208396)

| | Relationship | Date of Birth | Phone Number | Tax Identification |
|---|---|---|---|---|
| ⊕ A P HEMI, INC (3208396) | 🖳 Owner/Signer | | ********** | EIN **-******* |
| 🜁 PO BOX 9 (3039702) | | | | |
| PINEVILLE NC 28134-0009 | | | | |

Additional Relationships
Tax Name: A P HEMI, INC (3208396)

## Presentments

No Presentments for Account

## Customer

| Date | Description | Transaction Amount | Principal: | Interest: | Principal Balance |
|---|---|---|---|---|---|
| Mar 31, 2014 | Original Rate | Interest Rate: | 6.500000 | | |
| Mar 31, 2014 | CHECK | $16,052.52 | $16,052.52 | | $16,052.52 |
| Mar 31, 2014 | Principal Payment | $16,052.52 | $16,052.52 | | $0.00 |
| Mar 01, 2017 | LOAN ACTIVATION | $67,894.96 | $67,894.96 | | $67,894.96 |
| Mar 01, 2017 | Principal Increase (Conversion) | $16,052.52 | $16,052.52 | | $83,947.48 |
| Apr 01, 2017 | Rate Change | Interest Rate: | 6.750000 | | |
| Apr 03, 2017 | FNB OF PA LOAN# ▓▓▓▓▓▓▓ | $2,005.00 | $1,518.81 | $486.19 | $82,428.67 |
| May 01, 2017 | FNB OF PA LOAN# ▓▓▓▓▓▓▓ | $2,005.00 | $1,572.25 | $432.75 | $80,856.42 |
| Jun 01, 2017 | FNB OF PA LOAN# ▓▓▓▓▓▓▓ | $2,005.00 | $1,550.19 | $454.81 | $79,306.23 |
| Jul 01, 2017 | Rate Change | Interest Rate: | 7.000000 | | |
| Jul 03, 2017 | FNB OF PA LOAN# ▓▓▓▓▓▓▓ | $2,005.00 | $1,528.07 | $476.93 | $77,778.16 |
| Aug 01, 2017 | FNB OF PA LOAN# ▓▓▓▓▓▓▓ | $2,009.35 | $1,585.90 | $423.45 | $76,192.26 |
| Sep 01, 2017 | FNB OF PA LOAN# ▓▓▓▓▓▓▓ | $2,009.35 | $1,564.90 | $444.45 | $74,627.36 |
| Oct 02, 2017 | FNB OF PA LOAN# ▓▓▓▓▓▓▓ | $2,009.35 | $1,559.52 | $449.83 | $73,067.84 |
| Nov 01, 2017 | FNB OF PA LOAN# ▓▓▓▓▓▓▓ | $2,008.91 | $1,596.89 | $412.02 | $71,470.95 |
| Dec 01, 2017 | FNB OF PA LOAN# ▓▓▓▓▓▓▓ | $2,008.91 | $1,592.00 | $416.91 | $69,878.95 |
| Jan 01, 2018 | Rate Change | Interest Rate: | 7.250000 | | |
| Jan 02, 2018 | FNB OF PA LOAN# ▓ | $2,008.91 | $1,587.22 | $421.69 | $68,291.73 |
| Feb 01, 2018 | FNB OF PA LOAN# ▓▓▓▓▓▓▓ | $2,016.73 | $1,617.89 | $398.84 | $66,673.84 |
| Mar 01, 2018 | FNB OF PA LOAN# ▓▓▓▓▓▓▓ | $2,016.73 | $1,613.91 | $402.82 | $65,059.93 |
| Apr 01, 2018 | Rate Change | Interest Rate: | 7.500000 | | |
| Apr 02, 2018 | FNB OF PA LOAN# ▓▓▓▓▓▓▓ | $2,016.73 | $1,610.11 | $406.62 | $63,449.82 |
| May 01, 2018 | FNB OF PA LOAN# ▓▓▓▓▓▓▓ | $2,023.99 | $1,640.65 | $383.34 | $61,809.17 |
| Jun 01, 2018 | FNB OF PA LOAN# ▓▓▓▓▓▓▓ | $2,023.99 | $1,637.69 | $386.30 | $60,171.48 |
| Jul 01, 2018 | Rate Change | Interest Rate: | 7.750000 | | |
| Jul 02, 2018 | FNB OF PA LOAN# ▓▓▓▓▓▓▓ | $2,023.99 | $1,634.97 | $389.02 | $58,536.51 |
| Aug 01, 2018 | FNB OF PA LOAN# ▓▓▓▓▓▓▓ | $2,030.67 | $1,665.23 | $365.44 | $56,871.28 |
| Sep 04, 2018 | FNB OF PA LOAN# ▓▓▓▓▓▓▓ | $2,030.67 | $1,626.65 | $404.02 | $55,244.63 |
| Oct 01, 2018 | Rate Change | Interest Rate: | 8.000000 | | |
| Oct 01, 2018 | FNB OF PA LOAN# ▓▓▓▓▓▓▓ | $2,030.67 | $1,709.57 | $321.10 | $53,535.06 |
| Nov 01, 2018 | FNB OF PA LOAN# ▓▓▓▓▓▓▓ | $2,036.36 | $1,679.46 | $356.90 | $51,855.60 |
| Dec 03, 2018 | FNB OF PA LOAN# ▓▓▓▓▓▓▓ | $2,036.36 | $1,667.61 | $368.75 | $50,187.99 |
| Jan 01, 2019 | Rate Change | Interest Rate: | 8.250000 | | |
| Jan 02, 2019 | Rate Change | Interest Rate: | 8.250000 | | |
| Jan 02, 2019 | FNB OF PA LOAN# ▓▓▓▓▓▓▓ | $2,036.36 | $1,712.58 | $323.78 | $48,475.41 |
| Jan 03, 2019 | Rate Change | Interest Rate: | 8.250000 | | |
| Feb 01, 2019 | FNB OF PA LOAN# ▓▓▓▓▓▓▓ | $2,042.41 | $1,720.26 | $322.15 | $46,755.15 |
| Feb 02, 2019 | Rate Change | Interest Rate: | 8.250000 | | |
| Mar 18, 2019 | Automatic Late Charge | $81.69 | | | $46,755.15 |

| Date | Description | Transaction Amount | Principal: | Interest: | Principal Balance |
|------|-------------|-------------------|-----------|-----------|-------------------|
| Apr 01, 2019 | Regular Payment | $321.44 | $0.00 | $321.44 | $46,755.15 |
| Apr 16, 2019 | Automatic Late Charge | $81.69 | | | $46,755.15 |
| Apr 29, 2019 | Interest Payment | $321.44 | | $321.44 | $46,755.15 |
| May 03, 2019 | Regular Payment | $321.44 | $0.00 | $321.44 | $46,755.15 |
| Jun 03, 2019 | Payment - Extra To Principal | $321.43 | $0.00 | $321.43 | $46,755.15 |
| Jul 16, 2019 | Automatic Late Charge | $12.85 | | | $46,755.15 |
| Jul 25, 2019 | Regular Payment | $321.43 | $0.00 | $321.43 | $46,755.15 |
| Jul 29, 2019 | Regular Pymt Excess to Principal | $0.01 | $0.00 | $0.01 | $46,755.15 |
| Aug 13, 2019 | Payment - Extra To Principal | $321.44 | $0.00 | $321.44 | $46,755.15 |
| Sep 16, 2019 | Interest Payment | $321.42 | | $321.42 | $46,755.15 |
| Oct 01, 2019 | Rate Change | Interest Rate: | 7.750000 | | |
| Oct 16, 2019 | Automatic Late Charge | $12.85 | | | $46,755.15 |
| Oct 21, 2019 | Regular Payment | $321.44 | $0.00 | $321.42 | $46,755.15 |
| | Late Charge: | $0.02 | | | |
| Nov 01, 2019 | Regular Payment | $301.96 | $0.00 | $301.96 | $46,755.15 |
| Dec 02, 2019 | Regular Pymt Excess to Principal | $301.96 | $0.00 | $301.96 | $46,755.15 |
| Dec 16, 2019 | Regular Payment | $2,457.82 | $2,306.85 | $150.97 | $44,448.30 |
| Jan 01, 2020 | Rate Change | Interest Rate: | 7.500000 | | |
| Jan 02, 2020 | FNB OF PA LOAN# ~~000000110~~ | $2,759.78 | $2,606.99 | $152.79 | $41,841.31 |
| Feb 03, 2020 | FNB OF PA LOAN# ~~~~ | $2,930.92 | $2,660.70 | $270.22 | $39,180.61 |
| Mar 02, 2020 | FNB OF PA LOAN# ~~0000201100~~ | $2,930.92 | $2,694.21 | $236.71 | $36,486.40 |
| Apr 01, 2020 | Rate Change | Interest Rate: | 6.000000 | | |
| Apr 16, 2020 | Automatic Late Charge | $117.23 | | | $36,486.40 |
| Apr 27, 2020 | Late Charge Waive (Manual) | $117.23 | | | $36,486.40 |
| Apr 30, 2020 | Payment - Extra To Principal | $2,930.92 | $2,534.14 | $396.78 | $33,952.26 |
| May 28, 2020 | Payment - Extra To Principal | $2,930.92 | $2,772.48 | $158.44 | $31,179.78 |
| Jun 25, 2020 | Payment - Extra To Principal | $2,930.92 | $2,790.62 | $140.30 | $28,389.16 |
| Jul 27, 2020 | Payment - Extra To Principal | $2,904.89 | $2,753.49 | $151.40 | $25,635.67 |
| Aug 24, 2020 | Payment - Extra To Principal | $2,904.89 | $2,789.53 | $115.36 | $22,846.14 |
| Sep 29, 2020 | Payment - Extra To Principal | $2,904.89 | $2,771.63 | $133.26 | $20,074.51 |
| Oct 01, 2020 | ACH PAYMENT | $110.98 | $104.29 | $6.69 | $19,970.22 |
| Nov 02, 2020 | FNB OF PA LOAN #~~102~~ | $99.85 | $0.00 | $99.85 | $19,970.22 |
| Dec 01, 2020 | FNB OF PA LOAN #~~002201105~~ | $99.83 | $0.00 | $99.83 | $19,970.22 |
| Jan 04, 2021 | FNB OF PA LOAN #~~0000010~~ | $99.85 | $0.00 | $99.85 | $19,970.22 |
| Feb 18, 2021 | Payment - Extra To Principal | $1,480.11 | $1,323.68 | $156.43 | $18,646.54 |
| Mar 03, 2021 | loan# ~~2000010~~Ad Hemi Inc. to clear Feb shortage from SBA | $8.62 | $0.00 | $8.62 | $18,646.54 |
| Mar 17, 2021 | Payment - Extra To Principal | $1,497.35 | $1,407.24 | $81.49 | $17,239.30 |
| | Late Charge: | $8.62 | | | |
| Apr 09, 2021 | Payment - Extra To Principal | $1,369.26 | $1,306.05 | $63.21 | $15,933.25 |
| May 17, 2021 | Automatic Late Charge | $54.77 | | | $15,933.25 |
| Jun 16, 2021 | Automatic Late Charge | $54.77 | | | $15,933.25 |
| Jul 16, 2021 | Automatic Late Charge | $54.80 | | | $15,933.25 |
| Aug 16, 2021 | Automatic Late Charge | $54.80 | | | $15,933.25 |
| Sep 16, 2021 | Automatic Late Charge | $54.80 | | | $15,933.25 |
| Oct 18, 2021 | Automatic Late Charge | $55.15 | | | $15,933.25 |
| Nov 16, 2021 | Automatic Late Charge | $55.15 | | | $15,933.25 |
| Dec 16, 2021 | Automatic Late Charge | $55.15 | | | $15,933.25 |
| Jan 18, 2022 | Automatic Late Charge | $56.36 | | | $15,933.25 |
| Feb 16, 2022 | Automatic Late Charge | $56.36 | | | $15,933.25 |
| Mar 16, 2022 | Automatic Late Charge | $56.36 | | | $15,933.25 |
| Apr 01, 2022 | Rate Change | Interest Rate: | 6.250000 | | |
| Apr 15, 2022 | Automatic Late Charge | $56.36 | | | $15,933.25 |

| Date | Description | Transaction Amount | Principal: | Interest: | Principal Balance |
|------|-------------|-------------------:|-----------:|----------:|------------------:|
| Jun 23, 2022 | Wire | $7,966.63 | $7,966.63 | | $7,966.62 |
| Jun 23, 2022 | Wire | $129.64 | | $129.64 | $7,966.62 |
| Jul 01, 2022 | Rate Change | Interest Rate: | 7.500000 | | |

**Exhibit 2**

| Deposit Date | Amount | Deposit Date | Amount |
|---|---|---|---|
| 9/25/2017 | $1,268.00 | 10/28/2019 | $634.00 |
| 10/11/2017 | $1,268.00 | 12/9/2019 | $634.00 |
| 10/31/2017 | $400.00 | 12/30/2019 | $1,000.00 |
| 11/6/2017 | $1,268.00 | 1/6/2020 | $634.00 |
| 11/21/2017 | $400.00 | 1/23/2020 | $900.00 |
| 12/14/2017 | $1,268.00 | 2/10/2020 | $634.00 |
| 12/19/2017 | $400.00 | 3/9/2020 | $634.00 |
| 1/17/2018 | $400.00 | 3/10/2020 | $1,000.00 |
| 1/22/2018 | $1,268.00 | 4/7/2020 | $634.00 |
| 2/12/2018 | $1,268.00 | 6/8/2020 | $900.00 |
| 2/20/2018 | $250.00 | 6/8/2020 | $634.00 |
| 2/20/2018 | $400.00 | 7/10/2020 | $634.00 |
| 3/9/2018 | $1,268.00 | 7/20/2020 | $1,000.00 |
| 3/19/2018 | $400.00 | 8/7/2020 | $634.00 |
| 4/17/2018 | $400.00 | 8/18/2020 | $900.00 |
| 4/23/2018 | $1,268.00 | 9/10/2020 | $634.00 |
| 5/7/2018 | $1,268.00 | 9/15/2020 | $900.00 |
| 5/17/2018 | $400.00 | 10/7/2020 | $634.00 |
| 6/13/2018 | $1,268.00 | 10/15/2020 | $900.00 |
| 6/19/2018 | $400.00 | 11/9/2020 | $634.00 |
| 7/9/2018 | $1,268.00 | 11/16/2020 | $1,000.00 |
| 7/17/2018 | $400.00 | 12/7/2020 | $634.00 |
| 8/6/2018 | $1,268.00 | 12/16/2020 | $900.00 |
| 8/17/2018 | $400.00 | 1/13/2021 | $634.00 |
| 9/11/2018 | $1,268.00 | 1/19/2021 | $900.00 |
| 9/18/2018 | $400.00 | 1/25/2021 | $4,000.00 |
| 10/4/2018 | $1,268.00 | 2/16/2021 | $900.00 |
| 10/31/2018 | $5,000.00 | 3/1/2021 | $105.00 |
| 11/6/2018 | $1,268.00 | 3/15/2021 | $950.00 |
| 12/11/2018 | $1,268.00 | 4/12/2021 | $634.00 |
| 1/14/2019 | $1,268.00 | 4/15/2021 | $900.00 |
| 2/11/2019 | $1,268.00 | 5/6/2021 | $634.00 |
| 3/7/2019 | $1,268.00 | 5/18/2021 | $900.00 |
| 3/19/2019 | $400.00 | 6/7/2021 | $634.00 |
| 4/8/2019 | $1,268.00 | 7/12/2021 | $634.00 |
| 4/17/2019 | $400.00 | 8/10/2021 | $634.00 |
| 5/9/2019 | $1,268.00 | | |
| 5/17/2019 | $400.00 | **Total 2 Year Transfers** | **$32,441.00** |
| 6/10/2019 | $1,268.00 | **Total 4 Year Transfers** | **$74,523.00** |
| 6/18/2019 | $400.00 | | |
| 7/11/2019 | $1,268.00 | | |
| 8/7/2019 | $1,268.00 | | |
| 9/11/2019 | $1,268.00 | | |
| 10/7/2010 | $634.00 | | |
| 10/28/2019 | $438.00 | | |

Debtor   Paul Hemingfield & Alison Hemingfield
         First Name    Middle Name    Last Name                              Case number *(if known)* _____

☑ Yes.  **Debtor 1 or Debtor 2 or both have primarily consumer debts.**
        During the 90 days before you filed for bankruptcy, did you pay any creditor a total of $600 or more?

        ☑ No. Go to line 7.

        ☐ Yes. List below each creditor to whom you paid a total of $600 or more and the total amount you paid that
          creditor. Do not include payments for domestic support obligations, such as child support and
          alimony. Also, do not include payments to an attorney for this bankruptcy case.

7. **Within 1 year before you filed for bankruptcy, did you make a payment on a debt you owed anyone who was an insider?** *Insiders*
   include your relatives; any general partners; relatives of any general partners; partnerships of which you are a general partner;
   corporations of which you are an officer, director, person in control, or owner of 20% or more of their voting securities; and any managing
   agent, including one for a business you operate as a sole proprietor. 11 U.S.C. § 101. Include payments for domestic support obligations,
   such as child support and alimony.

☐ No.
☑ Yes. List all payments to an insider.

|  | Dates of payment | Total amount paid | Amount you still owe | Reason for this payment |
|---|---|---|---|---|
| **Norma Lee** <br> Creditor's Name <br> **122 Spring** <br> Number   Street <br> **Statesville NC   28677** <br> City     State   ZIP Code | _____ <br> _____ <br> _____ | $ 7,608.00 | $ 0.00 | **parental support** |
| **Peter Lee** <br> Creditor's Name <br> **122 Spring Shore Rd** <br> Number   Street <br> **Statesville NC   28677** <br> City     State   ZIP Code | _____ <br> _____ <br> _____ | $ 10,800.00 | $ 0.00 | **parental support** |

8. **Within 1 year before you filed for bankruptcy, did you make any payments or transfer any property on account of a debt that benefited an insider?**
   Include payments on debts guaranteed or cosigned by an insider.

☑ No.
☐ Yes. List all payments that benefited an insider.

| **Part 4:** | Identify Legal Actions, Repossessions, and Foreclosures |
|---|---|

9. **Within 1 year before you filed for bankruptcy, were you a party in any lawsuit, court action, or administrative proceeding?**
   List all such matters, including personal injury cases, small claims actions, divorces, collection suits, paternity actions, support or custody modifications,
   and contract disputes.

☑ No
☐ Yes. Fill in the details.

10. **Within 1 year before you filed for bankruptcy, was any of your property repossessed, foreclosed, garnished, attached, seized, or levied?**
    Check all that apply and fill in the details below.

☑ No. Go to line 11.
☐ Yes. Fill in the information below.

11. **Within 90 days before you filed for bankruptcy, did any creditor, including a bank or financial institution, set off any amounts
    from your accounts or refuse to make a payment because you owed a debt?**

☑ No
☐ Yes. Fill in the details

12. **Within 1 year before you filed for bankruptcy, was any of your property in the possession of an assignee for the benefit of
    creditors, a court-appointed receiver, a custodian, or another official?**

☑ No
☐ Yes